## O. DAVIS VS. SAMUEL P. WALKER, Adm'r.

1. CHANCERY PRACTICE: *Judgment creditor, junior and senior. Collateral securities held by senior.*

   In a proper case, a creditor who has a claim upon two funds, may be compelled to go against that one to which he has an exclusive right, leaving the other to a creditor who can resort to it alone.

2. SAME: *Case in judgment.*

   W. and D. both held judgments against S. W. held the senior judgment, and also collaterals to secure the payment of his judgment. D. filed his bill to enjoin the sale of the property of S., under W.'s judgment, and to compel W. to make his money out of the collaterals: *Held*, that it was not error for the chancery court to appoint a receiver, charged with the sale of the collaterals on the market for the best price, the collaterals having a known market value. But it was error to make disposition of the money upon bill and exhibits alone, without answer or proof.

APPEAL from the Chancery Court of *Alcorn* County.

Hon. O. H. WHITFIELD, Chancellor (by interchange).

One R. P. Sawyers transferred certain bonds of the Mobile & Ohio Railroad Co. to Wyatt Moye in his lifetime, and guarantied their payment. An action was brought by Walker, administrator of Moye, on the guaranty in the circuit court of Alcorn county, and a judgment recovered; subsequently Orlando Davis, appellant, recovered judgment in same court against Sawyers. Walker, administrator, was proceeding to enforce his judgment against Sawyers by a sale under execution, when he was enjoined by Davis, on the ground that Sawyers' property was not sufficient to satisfy both judgments, and that Walker should be compelled to enforce satisfaction of his claim against the Mobile & Ohio Railroad Co. A demurrer was filed to the bill, which was sustained, and leave given to amend. An amended bill was filed, which stated that the bonds had a marketable value of eighty cents on the dollar, and prayed that a receiver be appointed to take possession of the bonds, and sell the same, and apply the proceeds to the payment of the judgment of Walker, and that for the balance due an execution issue. To the amended bill, Walker did not plead, and a

decree *pro confesso* was rendered, directing the sale of the bonds by the receiver, and the application of the proceeds of sale to Walker's judgment, and if there should be a deficiency, that an execution should issue. From this decree, rendered in accordance with the prayer of Davis' amended bill, the case comes to this court by appeal.

The following errors are assigned:

1. The court erred in rendering a decree on the motion of the defendants in the court below.

2. The court erred in rendering a decree for the sale of the bonds without any appearance or answer on the part of the defendant R. P. Sawyers, and when no *pro confesso* as to him had been taken, and without any answer from defendant Walker.

3. The court erred in rendering a decree before the cause was at issue as to all the parties.

4. The court erred in decreeing a sale of the bonds on the motion of the defendant before answer, and before time had been given to take proof.

5. The court erred in rendering a decree before the defendant Sawyers had been notified of the filing by complainant of an amended bill.

6. The court erred in rendering a decree before the complainant was in a condition to take a decree against the defendant Sawyers that would be binding on him.

7. The court erred in rendering a decree for the sale of the bonds, coupons, etc.

8. The court erred in decreeing that the special commissioner J. M. Stone should sell the bonds, coupons, etc., at a private sale.

9. The court erred in rendering a decree, before the cause was set down for hearing.

10. The court erred in decreeing for the appropriation of the proceeds of the sale of the bonds, coupons, etc., to the payment of the Walker judgment.

11. The court erred in rendering a decree for the sale of the bonds, etc., and appropriation of proceeds to the Walker judg-

ment, without decreeing as to the appropriation of the excess over the amount necessary to pay the Walker judgment.

*Curlee & Stanly*, for appellants :

Insisted that where there are two judgment creditors, and one has collaterals to secure his debt, he should be required to resort to his collaterals, and cited Gist *v.* Pressley, 2 Hill Eq., 324; Stoney *v.* Schultz, lid., 496 ; Leading Cases in Eq., H. & W.'s note, vol. 2, p. 1; 1 Freeman Ch., 423; 8 S. & M., 359; Gadberry *v.* McClure, 4 Strob, 178; Gill *v.* Lyon, 1 Johns. Ch., 447 ; Clowes *v.* Dickenson, 5 Johns. Ch., 235; 9 Cow., 403 ; Baine *v.* Williams, 9 Humph., 580; N. Y. Steamboat *v.* N. J. Co., 1 Hopk., 460 ; Keaton *v.* Miller, 38 Miss., 634; Rollins *v.* Thompson, 13 S. & M., 524 ; 1 Story Eq., § 634–643.   Walker had no right to a decree until the cause was at issue.

*Houston & Reynolds*, for appellee :

The demurrer to the original bill was properly sustained.   The object of the bill is to compel Walker to resort to satisfaction of his claim against the Mobile & Ohio Railroad Company; if he failed, then enforce his judgment against Sawyers, the guarantor. No action was brought against the railroad, but against Sawyers alone.   The doctrine contended for does not obtain in a case like this.   2 Leading Cases Eq., 223, 225 ; Neff *v.* Miller, 8 Barr, 347.   A court of equity will not, at the instance of a junior creditor, compel a senior to resort to a fund upon which the senior alone has a lien, when he must encounter expense and delay in collecting his debt.   Behn & Foster *v.* Young, 21 Ga., 207 ; Post *v.* Macᵱall, 3 Bland., 513.   The fund must be adequate to the prior lien, and be certain.   Briggs *v.* Planters' Bank, Freeman Ch., 584; Evertson *v.* Booth, 19 Johns., 486; 1 Story Eq., 528.   Nor can the senior creditor be compelled to go out of the jurisdiction to enforce his demand.   Denham *v.* Williams, 39 Ga., 320.

SIMRALL, J., delivered the opinion of the court.

At the April term, 1872, Samuel P. Walker, administrator of

Wyatt Moye, deceased, recovered judgment in an attachment suit against R. P. Sawyers for $7,762.15. The attachment had been served upon a large amount of property.

On the 8th of October, 1872, the complainant, O. Davis, recovered judgment against Sawyers for $1,359. J. W. Harvey had also recovered judgment for $63.02, and Thomas Carson for $507.75; these last judgments are junior to Walker's, but senior to Davis'. The foundation of the recovery by Walker, administrator, was the assignment and guaranty by Sawyers to Moye, the intestate of certain mortgage bonds, with interest coupons attached, of the Mobile and Ohio Railroad Company. The mortgage or deed in trust to secure these bonds and others of a like issue covers the railroad rolling stock and other property, and also the net income. These bonds are past due. It was agreed between Walker and Sawyers at the time the judgment was rendered, that Walker should retain these bonds and coupons, as collateral security (they exceed in amount Walker's judgment); it was also agreed that proceedings under the judgment should be suspended for a year unless Sawyers requested execution of the judgment sooner. Prior to the expiration of the year, Walker sued out a *venditioni exponas*, and the sheriff advertised the property for sale. Prayer that a receiver may be appointed to take charge of the bonds and take steps for their collection or sale, and for general relief. The amended bill alleged that the agreement between Walker and Sawyers was made for the purpose of defrauding the complainant who was then a creditor of Sawyers; the property was to be bought in and held in secrect trust for Sawyers, so that complainant would be defeated of his debt. The additional prayer is, that complainant have priority over Walker's judgment. After the amended bill was filed, a motion was made by the complainant for the appointment of a receiver. It does not appear what disposition, precisely, was made of the motion. It can be inferred from the recitals in the order entered that it was sustained, for the only action of the court upon the subject is what purports to be a modification of a previous order.

This modification was at the instance of Walker. The direction was, in substance, that a receiver be appointed to take charge of the bonds, and that he sell them in the best market, and for the best price to be had, and that he should apply the money to pay Walker's judgment, and if there should not be enough to satisfy the judgment, then for any deficit, execution might go; in the meantime the injunction is retained.

The bill is framed upon the grounds, first, that Walker has a security for his debt, besides the lien of his attachment and judgment, whilst the complainant has but one, therefore Walker should be required to obtain satisfaction of his judgment out of the security, in which the complainant has interest, so that he may apply the property, to which alone he can resort for his payment. In a proper case, a creditor who has a claim upon two funds, may be compelled to go against that one to which he has an exclusive right, leaving the other to a creditor, who can resort to it alone.

The decree does no violence to that principle, but distinctly applies it for the benefit of the complainant. The complainant submits to the chancellor, among his alternative prayers, that the bonds and coupons may be sold (if he has not, on the facts stated, a preference), then the proceeds be paid on Walker's judgment, and that he have execution only for the deficit. The complainant avers that Walker and Sawyers entered into a combination to sell the attached property, which was all the debtor had accessible to process, for a small price and have the title so controlled, as that Sawyers could enjoy some secret advantage in it. It cannot be controverted that Davis might well insist that the security held by Walker should first be exhausted, before he should proceed against the property, and since the complainant stated that the security exceeded Walker's judgment, it would be proper to retain the injunction until it was ascertained what sum the bonds and coupons would produce.

The appellant himself moved for the appointment of a receiver to take charge of these bonds and coupons. He cannot complain of so much of the orders as places the funds in the hands of a re-

ceiver; nor can he complain of authority given the receiver, to realize upon the bonds and coupons; unless it be that he was instructed to sell, for cash, in the best market, rather than institute proceedings by suit to collect them.

In administering the fund placed by Sawyers as indemnity with Walker's intestate, a court of equity ordinarily should conform to the plan agreed upon, as the mode of making the fund available. It would be exceedingly onerous, expensive and dilatory, to require the creditor, who held not exceeding seven or eight thousand dollars of bonds and coupons out of an issue of over a million of dollars, to proceed to a foreclosure of the deed of trust, when the understanding was that the bonds should be sold in the market.

These bonds and coupons were of a class of stocks and securities intended for investment and for sale in open market. They have in money centres a sale value. They rest upon the footing (in this respect) very much, of government or municipal bonds. When, therefore, such securities are hypothecated as collateral security, especially in small amounts, it must be taken, that the creditor may realize upon them by sale and negotiation; and is not required to collect them by suit; such was the agreement in this case.

There is no good objection to so much of the decretal order, as instructed Col. Stone to convert the securities into money by sale; that is as beneficial to Davis, the appellant, as to Walker. But the court acted prematurely in going farther, and upon the bill and exhibit alone, without answer or proof, assuming to make a final disposition of the money, the case was not in a condition for a final settlement of the rights of the parties. The bill developed enough to call for the appointment of a receiver and for a conversion of the fund into money, so as to be ready to meet the exigencies of a final decree. But the case was not in condition to demand a decision adversely to the complainant on the branch of it, setting up the fraudulent agreement and combination. It may be very difficult for the complainant to sustain the bill in that aspect of it.

The agreement for delay was made six months before Davis obtained his judgment. The *venditioni exponas* was returnable to the April term, 1873 — the earliest term to which Davis could have made his first execution returnable. Walker was actually proceeding to sell on the 7th of April, when restrained. The complainant does not pretend that there is any fraud in Walker's judgment, only that the parties had combined to make a sale, which they intended to result to the benefit of Sawyers. But perhaps if that were the only ground of equity, the scheme might be defeated by Davis appearing and bidding at the sale, and making the property bring a fair price. It is not the case of sale of property at low prices, produced by fraud, but an agreement (not executed) to endeavor to perpetrate a fraud, which, however, might be defeated in the measure indicated.

On account of the state of the pleadings, we reverse so much of the decree as makes a final appropriation of the money to be produced by sale of the bonds and coupons. The residue of the decree is affirmed, so that the receiver may sell the bonds and coupons as directed. But he shall hold the proceeds subject to the further order of the court.